Case No. 15-1349 et al. EF International Lang. Schools, Inc. Petitioner v. National Labor Relations Board Mr. Bucking for the petitioner, Ms. Feard for the respondent Mr. Bucking on behalf of the petitioner, EF. There are multiple flaws in the board's decision in this case. I'd like to start off by focusing on two. One, the judge applied the wrong legal test. And number two, the judge excluded the most important evidence in the case. On each of these points, the NLRB agreed with our position. And in footnotes to the NLRB's decision, the NLRB said so. It disregarded them, but it said that this had occurred. First, the judge applied the wrong legal test by applying the Burnap and Sims analysis rather than the right-line analysis. And the board agreed that the judge applied the wrong legal test. Now, the NLRB says that this doesn't matter because the judge applied the correct test as an alternative analysis and the board also applied the correct test. The fundamental problem with that is the tests are incompatible. And when the judge applied the Burnap and Sims analysis, she revealed that she didn't actually understand what the case was about. They don't think that's curable. And the board didn't address how it's curable. I don't know how this court could find that it's curable. And here's why they're incompatible. Under Burnap and Sims, it must be undisputed that there was protected concerted activity and misconduct occurred within the course of the protected activity. And the classic case is violence on a picket line. So for the judge who found that Burnap and Sims apply, she failed to appreciate that there was a series of protected activity which is not disputed. And then there's also a series of unprotected activity which is also not disputed. And the board does not claim that the complaints about Ms. Jessie's schedule and ultimately the December 18th email, which is the immediately precipitating factor to the discharge, were unprotected. And so the judge could not possibly have fairly weighed those two things. And in a right-line analysis, of course, that's... Well, the judge did the right-line analysis, right? Spent much more ink discussing the right-line analysis than the erroneous analysis. So in that part of the opinion, and of course we're not reviewing the ALJ's actions, we're reviewing the board's actions, but just sticking with this argument, what part of the ALJ's discussion of right-line was infected by the erroneous interpretation under the other standard? Your Honor, I submit the entire thing was infected by the analysis. Can you point to one thing that proves your point? Yes, Your Honor. The judge found that the only misconduct cited for Andrea Jessie's discharge was her protected concerted activity. That's a quote from the decision. And the judge said that that's why she applied the Burnap and Sims analysis. When she then later goes on and says, now I'm going to apply right-line as an alternative test, it's really impossible to apply that, because she's already decided the thing that right-line is supposed to decide. By deciding in the first instance that the only misconduct at issue is protected concerted activity, she could not possibly have fairly weighed the things she had to weigh in order to do a right-line analysis, because the fundamental inquiry under right-line is, what is the reason? Is it the protected concerted activity, or is it the legitimate business reason the employer cites? By saying right at the outset, in order to apply the Burnap and Sims analysis, that the only thing at issue is protected concerted activity, it taints the entire decision, and she prejudged that. And so the right-line analysis is really just going through the motions. The right-line was an independent basis for the decision, right? Your Honor, I don't think that's possible, to have an independent basis for the decision. I don't think there's such fundamentally incompatible analyses, because that's why it's independent. Well, but, Your Honor, as I was just saying in response to Judge Wilkins' question, you cannot do that analysis without prejudging the right-line analysis. That's what she did. Your Honor, I'd like to address a couple of other reasons, though, that are embedded in this. And the most significant is the evidentiary issue. And this goes to the very same issue of the flaw in the judge's reasoning and the fact that the judge clearly didn't understand the case. She excluded evidence of the state of mind of the decision-makers. I asked a specific question at trial about this. The general counsel objected to it, and the judge ruled. And the judge said, it's totally irrelevant. I don't care what the decision-maker was thinking. All I care about is what she said and what she did. I do not know how you can do a right-line analysis and say what the judge said, because a right-line analysis, the only thing that matters is what the decision-makers was thinking. That's the only thing that matters. And the judge would not allow that evidence in the record. And, again, the NLRB agreed that was a flaw. But the judge gave you an opportunity to do an offer of proof of what that evidence would be, right? That's true. And what was the offer of proof as to what that testimony would be? Your Honor, what the judge said, to provide the context of the offer of proof, is you can do an offer of proof if you want to, but I am not going to pay any attention to it. Those were the judge's words on the record. Nonetheless, you could have made your record for the board had you taken advantage of the offer, to make an offer of proof. And I did, Your Honor. I did make an offer. I did take advantage of it to a certain degree. Tell us what that was. What was that? Well, the- Instead of answering a different question, answer the one he asked you. Okay, Your Honor. I asked one of the two decision-makers the question that had originally been objected to, was what were you thinking when you read the December 18th email, which we say was the reason for the discharge. And the witness answered it. She said she was frustrated because it showed that Andrea Jessie couldn't take criticism and she couldn't take credit. And the reason, the background of that is that she had previously been ranked among the top in the school in her reviews, and now she was ranked at the very bottom of the school during this critical time period. The important thing about that is not so much the substance of the answer. And the reason the NLRB dismissed it in its footnote is the NLRB said, well, that answer was largely cumulative of something the witness said previously. But I submit that that misses the entire point of the right-line analysis. It almost doesn't matter what the substantive answer is. What matters is that you're asking the decision-maker, explain to us what your reaction was to that email, and hence your rationale for the decision. And when the judge says right at the outset, I'm not going to pay any attention to it, what the judge is signaling is that she's not actually going to consider what matters. Why do we need the board decision? Your Honor, yes, except that you have to look at the way this is presented in this court. The ALJ reaches a decision, and the board says, well, we largely defer to what the ALJ decides because it's the ALJ's job to assess the witness's credibility, to look at demeanor, to assess all the evidence, But we have also said that the board is not bound by the effect of penalty to the ALJ. We cannot go back and reclaim that the board can't. Well, the board doesn't, Your Honor. The board's standard is it doesn't either. It almost universally defers to the ALJ's decision. And so I think the problem is that this court is going to defer to the board, and the board is going to defer to the ALJ, but the ALJ didn't do the most fundamental job of the ALJ. The ALJ's one and only job in a right-line test is to decide what was the subjective reason for the decision at issue. And the judge said, I don't care what the subject reason for the issue is. It doesn't matter to me. I only care what was said and what was done. So that evidentiary decision, which goes to the board, Well, doesn't that make sense? The question isn't what was in their minds. The question is the impact of what was said on a reasonable employee. The question is, would a reasonable employee consider it threatening? That's the question. Well, Your Honor, that's not And that can't depend on anything that's subjective. It can only depend on what the employer actually said. No, Your Honor. No? I think you're addressing a different part of the case which I'm not addressing, which is the alleged threats. That is an objective standard. The discharge decision is a subjective standard. The right-line decision is subjective, and this Court has issued many decisions which we've cited in our papers which have made clear it's a subjective decision. And, by the way, Your Honor, that is one other flaw in the judge's decision. By bootstrapping the threats which were decided under an objective standard as evidence of the subjective state of mind of the decision makers at issue in this case was another error of the judge. Okay. My eight minutes is up there. Okay, thank you. Good morning. I'm Heather Beard for the Board. The Board here reasonably found that EF threatened Ms. Jessie for her protected concerted activity in her meetings and in her group emails and then followed through on its threats by discharging her for her protected activity. Now, my opponent has raised two issues, the first being that the judge applied the wrong legal test, and as Your Honors had discussed, as the Board found, which is the decision in front of the Court, that Burnap and Sims was not the legal test to apply but that the judge's independent review under right-line was the proper test. And, in fact, not only was right-line the proper test, but the judge and, as reviewed by the Board, properly applied right-line to the evidence in this case. If it's right-line, then state of mind is the question, right? That is correct. And doesn't that make it error for the ALJ to have excluded the question about state of mind? As the Board found here, at best, it was harmless error because of the proffer that was made by Mr. Bucking with Ms. Carnes, because when taking a look at that proffer, what was stated was simply cumulative of all of the other statements about her state of mind, which she was able to testify. Both Ms. Carnes and Conway did. And so the Board finding there was that we did have an assessment, a dual motive assessment under right-line. And the third point that my opponent was making with regard, I'd like to go there, about the bootstrapping of the threats, I think it's clear that under right-line, what the judge found and the Board affirmed was that here we had protected concerted activity, which was set forth specifically in the judge's findings as well as in the Board's brief, and that after that activity took place, there were threats made by Director Riley about cautioning Ms. Jessie not to engage in speaking on behalf of her colleagues, which is quintessential Section 7 activity under the National Labor Protected Activity under the National Labor Relations Act, and to refrain from sending group emails. And indeed, what can't be lost here is that when she was discharged, she was told by Mr. Riley that we didn't like the group emails. And so under right-line, despite the fact that there was evidence that the decision-makers considered other factors, what the judge did and the Board affirmed was a full and thorough analysis of all of that other evidence to conclude that those reasons given were protectual and that in any event they wouldn't have been sufficient to show that Ms. Jessie would have been terminated despite her protected concerted activity. The second thing, I guess, that I would like to point out with regard to the reply brief is there's a lot of ink spilled with regard to whether or not the activity of Ms. Jessie was concerted. And I will point out that that was not raised in the opening brief by our opponent. However, as the evidence definitely shows, the Board thoroughly explained why all of the activity that it found was the reason Jessie was terminated was protected and was concerted and why Ms. Jessie acted on behalf of other employees, including herself. So the decision here with regard to Ms. Jessie's discharge, as well as the threats that were made by Director Riley, is supported by substantial evidence. And under this Court's standard of review, the company has not presented anything that would warrant reversal on that issue. If Your Honors don't have any further questions with regard to that particular piece of this, if you have questions with regard to the videotaping, I'm happy to discuss that. Do you want to say anything about her comment about French people being complaining? That was a comment that Ms. Jessie did make in her December 18th email, and that was what Ms. Conway and Ms. Porence said was the reason for her termination. And as the Board and the judge recognized with regard to a comment like that, it's not a good comment, and that that comment could be considered a slur. However, under the policies and practices of the employer, they were not able to demonstrate that had she not engaged in her protective concerted activity, that her penalty for such a statement in a private email would have been discharged, and so that she would have been discharged. And so with regard to that comment, it simply was not demonstrated, as was the burden by EF here, that she would have been fired for making that comment that upset her extensive protective concerted activity. Anything else? Okay, thank you. Did counsel have any time left? No, we do not have any time left. You can take two minutes if you'd like. Thank you, Your Honor. Your Honor, I'd like to address two issues that were raised by the Board. The first is the videotape issue. There is a Board decision... You did not address that in your opening remarks. Yes, Your Honor, it's addressed in the... And you rise now for a rebuttal. Did counsel say something about that that you're rebutting? The videotape. Yes, Your Honor. She said something you're rebutting? I believe she did, Your Honor. What was it she said that you're rebutting? That she addressed the use of the... The meeting that she said was concerted activity was preceding the termination decision was testimony given by videotape. Your Honor, I'll move on to a different point. Your Honor, the fundamental quid pro quo of the level of deference that the Court gives to the Board is that the Board understands the law and applies the law in the right way. The reason this Court gives deference to the Board is in large part because the Board is supposed to have expert knowledge of the labor law and the way the dynamics work in the American workplace. Where the judge who, in the first instance, is assessing the credibility of witnesses, ruling on the facts, and then the Board is deferring to those points, the quid pro quo is broken. And this Court cannot defer to a decision of an agency based on the expertise of that agency and its experience in administering the law when the agency's judge doesn't know the correct legal standard, doesn't admit the right evidence. Ultimately, the entire issue in the case is why Ms. Jessie was terminated. And the Board would say it's because she was raising questions about health care a month before the discharge rather than an ethnic slur that occurred two days before the discharge. And I don't know how you can rely upon the judge's assessment of that fundamental question when the judge didn't even understand the legal evidence and did not allow in the evidence that most matters in the case. Okay, thank you. Thank you. Case is submitted.
judges: Tatel, Wilkins, Sentelle